**Pedro Oscar CRUZ, et al.,
Plaintiffs, Appellants,**

v.

**Juan R. MELECIO, etc., et al.,
Defendants, Appellees.**

No. 99–1960.

United States Court of Appeals,
First Circuit.

Heard Dec. 6, 1999.

Decided Feb. 17, 2000.

Roberto A. Fernandez for appellants.

Pedro A. Delgado, with whom O'Neill & Borges was on brief, for defendants-appellees.

Gustavo A. Gelpí, Solicitor General, Puerto Rico Dep't of Justice, for intervenor-appellee.

Before Selya, Boudin and Lynch, Circuit Judges.

SELYA, Circuit Judge.

The appellants in this case challenge the constitutionality of certain provisions of Puerto Rico law regulating ballot access on the part of political parties. Their appeal asks us to set aside an order of the district court dismissing their complaint and to grant declaratory and injunctive relief. Resolving this dilemma requires us to confront complex and highly nuanced questions of comity, federalism, and the proper use of federal judicial power. After studying the problems presented, we reverse the order of dismissal and remand to the district court with directions to stay further proceedings pending the resolution of a related case awaiting decision before the Puerto Rico Supreme Court.

## I. BACKGROUND

The appellants are citizens of Puerto Rico and members of the Partido Acción Civil (the Party). They seek to register the Party on a commonwealth-wide basis, so that its candidates will appear on the ballot for the November 2000 general election. To do so, they must file petitions with the Puerto Rico Election Commission (the Commission) before June 1, 2000, which have been signed by registered voters aggregating no less than five percent of the total votes cast for gubernatorial candidates in the preceding general election. *See* P.R. Laws Ann. tit. 16, § 3101(3). Each petition must be notarized and filed within seven days. *See id.* §§ 3101(3), 3102. Based on participation in the 1996 gubernatorial election, the Party must garner approximately 100,000 signatures.

Apparently viewing this hurdle as insurmountable (or nearly so), the appellants filed this action for declaratory and injunctive relief in Puerto Rico's federal district court. They named the members of the Commission as defendants and asserted that the notarization requirement and seven-day deadline, separately and in combination, transgress the First and Fourteenth Amendments to the United States Constitution by abridging the appellants' rights to free speech and association, to participate meaningfully in the political process, to vote, and to enjoy equal protection of the laws. In support of these asseverations, the appellants allege that the process is prohibitively expensive because only attorneys can act as notaries in Puerto Rico; that, in any event, too few are willing to take the time to validate petitions; that the seven-day requirement is burdensome in light of the tight time parameters and the "monumental" paperwork that must be included when a petition is submitted to the Commission; that petitions to register a local party need not be notarized; that petitions for aspirants in party primaries may be filed ten days after being sworn (rather than seven); and that there is no comparable deadline for petitions to place independent candidates on the ballot.

The appellants filed their federal complaint on March 23, 1999, and simulta-

neously moved for a preliminary injunction. Defendant-appellee Juan R. Melecio, the Commission chairman, cross-moved for dismissal. The Puerto Rico Attorney General intervened, see 28 U.S.C. § 2403(b), and joined Melecio's motion to dismiss. The motion theorized that the appellants' action was barred by res judicata and that, in all events, the challenged requirements serve compelling state interests without unduly burdening voters' constitutional rights.

The reference to res judicata relates to an action filed by the Party in a commonwealth court on October 6, 1998. In that suit, brought against the Commissioners and others, the Party challenged the same ballot-access requirements under both the United States and Puerto Rico constitutions. The Puerto Rico Court of First Instance granted summary judgment in favor of the defendants on January 21, 1999. Just two days after the commencement of the federal court action, the Puerto Rico Circuit Court of Appeals affirmed the judgment. See Partido Acción Civil v. Commonwealth, No. KLAN9900158, slip op. (P.R.App. Mar. 25, 1999). The Party took a further appeal to the Puerto Rico Supreme Court. On July 30, that court dismissed the appeal, see P.R. Laws Ann. tit. 4, § 22i(b) (providing for direct appeal from a judgment of unconstitutionality, but not from a judgment of constitutionality), instead granting certiorari. The case (No. AC–1999–20) has been briefed and is awaiting decision.[1]

The district court elected neither to delve into the intricacies of the res judicata defense nor to address the appellants' prayer for preliminary injunctive relief. Instead, it went straight to the heart of the case and dismissed the action on the merits. See Cruz v. Melecio, Civ. No. 99–

1. Technically, the Puerto Rico Supreme Court proceeding constitutes review on certiorari. Elevating substance over form, we sometimes refer to that proceeding as an appeal.

2. Puerto Rico is the functional equivalent of a state for purposes of full faith and credit. See

1296(PG), slip op. (D.P.R. July 7, 1999) (granting defendants' and intervenor's motion to dismiss under Fed.R.Civ.P. 12(b)(6)). The district court ruled while the improvident commonwealth appeal was pending and a few days before the Puerto Rico Supreme Court granted certiorari. This appeal ensued.

## II. RES JUDICATA

If successful, the res judicata defense ends our inquiry. Thus, we begin by addressing the efficacy of that defense.

By federal statute, "judicial proceedings of any court of any ... State, Territory or Possession ... shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State, Territory or Possession." 28 U.S.C. § 1738. This mandate "requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." Kremer v. Chemical Constr. Corp., 456 U.S. 461, 466, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982). The fact that a suit raises a federal question or seeks to vindicate federal constitutional rights does not blunt the force of this command. See Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 80–85, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); Allen v. McCurry, 449 U.S. 90, 96–105, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). Consequently, state law, with all its wrinkles, applies in deciding the res judicata effect of a state court judgment in a federal court.[2] See Montalvo–Huertas v. Rivera–Cruz, 885 F.2d 971, 974 (1st Cir. 1989). We therefore look to the law of Puerto Rico to deduce the preclusive effect

Medina v. Chase Manhattan Bank, 737 F.2d 140, 142 (1st Cir.1984). Hence, we sometimes refer to the Puerto Rico courts as "state courts" and to Puerto Rico law as "state law," notwithstanding Puerto Rico's unique commonwealth status.

of the judgment entered by the Court of First Instance.

■ The Civil Code limns the operation of the doctrine of res judicata in Puerto Rico:

In order that the presumption of the res adjudicata may be valid in another suit, it is necessary that, between the case decided by the sentence and that in which the same is invoked, there be the most perfect identity between the things, causes, and persons of the litigants, and their capacity as such.

P.R. Laws Ann. tit. 31, § 3343. Although the present appellants are not named parties in the commonwealth court proceedings, they are members of the organization that is the plaintiff there and they control that litigation. This type of privity suffices for res judicata purposes. *See Montalvo–Huertas*, 885 F.2d at 975 (applying Puerto Rico law); *see also Restatement (Second) of Judgments* § 39 (1982). After all, courts typically have refrained from interpreting the phrase "perfect identity" literally, *see Futura Dev. Corp. v. Centex Corp.*, 761 F.2d 33, 43–45 (1st Cir.1985), and the appellants do not suggest that nominal differences between two actions will suffice to undermine the preclusive effect of a commonwealth court ruling.

■ Going beyond "identity" questions, due process imposes an added requirement: for res judicata to operate, the precluded party must have had a full and fair opportunity to litigate her case in the earlier proceeding. *See Allen*, 449 U.S. at 95, 101 S.Ct. 411; *Massachusetts Sch. of Law at Andover v. American Bar Ass'n*, 142 F.3d 26, 39 (1st Cir.1998); *Medina v. Chase Manhattan Bank*, 737 F.2d 140, 145 (1st Cir.1984). The appellants seize upon this imperative and vigorously assert that they were denied a full and fair opportunity to litigate their federal claims in the commonwealth proceedings.

Stripped of rhetorical flourishes, this assertion reduces to the notion that, by deciding the case on summary judgment and without hearing oral argument, the commonwealth trial court deprived the Party of an opportunity to litigate its claims. This is sheer persiflage. There is nothing fundamentally unfair about the summary judgment process, nor does the absence of an opportunity to supplement written submissions with oral advocacy constitute a denial of due process.[3] *See United States v. One 1974 Porsche 911–S*, 682 F.2d 283, 286 (1st Cir.1982) ("There is no constitutional right to oral argument on a summary judgment motion.").

■ The appellants' next argument—that the commonwealth trial court failed to acknowledge the constitutional principles underlying their claims—leads nowhere. Although the commonwealth trial court did not explicitly mention the federal constitutional rights of Party members, it relied throughout its opinion on United States Supreme Court case law evaluating the constitutionality of registration requirements for new political parties. We have deemed even more cryptic references sufficient in other settings to show that a state court considered a federal constitutional argument, *see, e.g., Nadworny v. Fair*, 872 F.2d 1093, 1101–03 (1st Cir.1989), and we see no reason to apply a different rule in this context. At any rate, it takes more than imprecise opinion writing to ground a violation of due process in a situation of this sort; substantive error, even of a constitutional magnitude, will not deprive a procedurally adequate judicial proceeding of res judicata effect. *See Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398–99, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981); *Bolker v. Superior Court*, 82 P.R.R. 785, 799–800 (1961); *cf. Jeter v. Hewitt*, 63 U.S. (22 How.) 352, 364, 16 L.Ed. 345 (1859) (observing that *"res judicata* ren-

---

**3.** The appellants' plaint strikes us as especially unbecoming since it was the Party that moved for summary judgment in the first place. *Cf. Kremer*, 456 U.S. at 485, 102 S.Ct.

1883 ("The fact that [the plaintiff] failed to avail himself of the full procedures provided by state law does not constitute a sign of their inadequacy.").

ders white that which is black, and straight that which is crooked"). A contrary rule would make it impossible to resolve constitutional claims with any degree of finality.

Having overcome these process-oriented objections, we turn next to the critical question: would the Puerto Rico courts ascribe preclusive effect to the existing judgment in the commonwealth case? We think not.

■■■ Under Puerto Rico law, claim preclusion requires a prior judgment on the merits that is, in the authoritative Spanish, "final y firme" (officially translated as "final and unappealable"). *See Worldwide Food Distribs., Inc. v. Colón Bermúdez,* 133 P.R. Dec. 827, 831, 1993 WL 840035 (1993) (official trans. at 4). This phrase makes manifest that a commonwealth court judgment cannot be accorded preclusive effect until all available appeals have been exhausted (or the time for taking them has expired). *See Vega Arriaga v. J.C. Penney, Inc.,* 658 F.Supp. 117, 120–21 (D.P.R.1987).[4]

■■■ Even though the Puerto Rico Supreme Court has not made this point in so many words, we believe that this is the clear implication of the court's repeated emphasis on the phrase "final y firme" in its discussions of res judicata. *E.g., Worldwide Food,* 133 P.R. Dec. at 831 (official trans. at 4); *Rodríguez Rodríguez v. Colberg Comas,* 131 P.R. Dec. 212, 222, 1992 WL 754895 (1992) (official trans. at 8); *A & P Gen. Contractors, Inc. v. Asociación Caná, Inc.,* 10 P.R. Offic. Trans. 987, 988 (1981); *De Jesús Borrero v. Guerra Guerra,* 105 P.R.R. 282, 285, 286 (1976) (per curiam); *Commonwealth v. Sociedad Civil Agrícola,* 104 P.R.R. 548, 554 (1975)

(per curiam); *González Saldaña v. Superior Court,* 96 P.R.R. 119, 122, 123 (1968). This emphasis is telling. As the Puerto Rico Supreme Court has written, "[r]es judicata is understood to mean that which has been settled by the final judgment of a judge or competent court and bears with it the firmness of its irreversibility." *Worldwide Food,* 133 P.R. Dec. at 834 (official trans. at 6) (quoting 8–2 Jose Maria Manresa, *Comentarios al Código Civil Español* 278 (1967)). And while the Spanish word "firme" encompasses several distinct legal concepts, *see* Henry Saint Dahl, *Dahl's Law Dictionary* 215 (3d ed.1999), there is no doubt that when the Puerto Rico Supreme Court uses the term to describe a judgment, the court intends to denote unappealability. *See Ex parte Bolívar,* 12 P.R.R. 261, 264–65 (1907) (explaining that "[t]he meaning of a *sentencia firme* and a *sentencia final* are entirely different in legal language, because an appeal does not lie from a *sentencia firme,* while an appeal does lie in the cases provided by the law from a *sentencia final* "); *see also Bolker,* 82 P.R.R. at 792 (translating "firme" in this context as "final and unappealable"). In other words, a judgment becomes "final y firme" when no further appeal from it can be taken. *See In re Pagán Colón,* 100 P.R.R. 220, 224 (1971); *González Saldaña,* 96 P.R.R. at 122.

■■■ Of course, the view that a judgment does not carry preclusive effect until all available appeals have been exhausted (or the time for taking them has expired) represents a departure from the juridical norm. *See* 18 James Wm. Moore et al., *Moore's Federal Practice* § 131.30[2][c][ii], at 131–97 to –98 (3d

---

4. Although we accept the *Vega Arriaga* court's conclusion, we expressly disclaim one component of its reasoning. The court, citing P.R.R. Civ. P. 53.9, drew support from the fact that lower court judgments in Puerto Rico are automatically stayed when they are appealed. *See Vega Arriaga,* 658 F.Supp. at 120–21. In fact, the finality of a judgment for res judicata purposes ordinarily is unaffected by the presence of a stay. *See Restatement (Second) of*

*Judgments* § 13 cmt. f (1982) ("[F]inality is not affected by the fact that the taking of the appeal operates automatically as a stay or supersedeas of the judgment appealed from that prevents its execution or enforcement, or by the fact that the appellant has actually obtained a stay or supersedeas pending appeal."); *see also* 18 James Wm. Moore et al., *Moore's Federal Practice* § 131.30[2][c][ii], at 131–97 (3d ed.1999).

ed.1999) (describing rule that a federal court judgment must be given res judicata effect as soon as it is issued, notwithstanding the possibility—or even the pendency—of an appeal); *see also Restatement (Second) of Judgments* §§ 13 cmt. f, 16 (1982). Be that as it may, Puerto Rico is not the only jurisdiction to adhere to the minority view. *See* E.H. Schopler, Annotation, *Judgment as Res Judicata Pending Appeal or Motion for a New Trial, or During the Time Allowed Therefor,* 9 A.L.R.2d 984, 1950 WL 7140 (1950 & Supp. 1997) (surveying cases from various jurisdictions). In interpreting the jurisprudence of a state, "our task is to ascertain the rule the state court would most likely follow under the circumstances, even if our independent judgment on the question might differ." *Blinzler v. Marriott Int'l, Inc.,* 81 F.3d 1148, 1151 (1st Cir.1996). In this instance, a preclusion principle that does not operate in the absence of a final, unappealable judgment lies well within the ambit of Puerto Rico's judicial power and thus merits federal recognition.

 The status of the proceedings in the commonwealth courts thus answers the res judicata question that has been raised in this case. Federal courts can ascribe no greater preclusive force to a state court judgment than would the courts of that state. *See Johnson v. De Grandy,* 512 U.S. 997, 1005, 114 S.Ct. 2647, 129 L.Ed.2d 775 (1994); *Board of Pub. Works v. Co-*

*lumbia College,* 84 U.S. (17 Wall.) 521, 529, 21 L.Ed. 687 (1873). Because claim preclusion under Puerto Rico law depends on the existence of an unappealable final judgment and the commonwealth court's judgment in this case was on appeal at the time the federal district court ruled, principles of res judicata do not foreclose the appellants' federal court action.[5]

## III. THE DISMISSAL ORDER

 This brings us to the crux of the matter. The district court dismissed the complaint for failure to state a claim upon which relief could be granted. *See* Fed.R.Civ.P. 12(b)(6). We afford plenary review to this ruling. *See Roth v. United States,* 952 F.2d 611, 613 (1st Cir.1991). In doing so, we remain mindful of our duty to reverse an order of dismissal under Rule 12(b)(6) if the well-pleaded facts, taken as true, justify recovery on any supportable legal theory. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir.1996).

 The jurisprudence of Rule 12(b)(6) requires us to consider not only the complaint, but also matters fairly incorporated within it and matters susceptible to judicial notice. *See Beddall v. State St. Bank & Trust Co.,* 137 F.3d 12, 16–17 (1st Cir. 1998); *Lovelace v. Software Spectrum Inc.,* 78 F.3d 1015, 1017–18 (5th Cir.1996).

---

5. To the extent that a statutory jurisdictional question arguably looms under the so-called Rooker–Feldman doctrine, *see District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), the fact that the judgment of the Court of First Instance lacks finality under Puerto Rico law resolves all doubt. Only a state court adjudication that itself has preclusive effect can bring the Rooker–Feldman doctrine into play. *See Davis v. Bayless,* 70 F.3d 367, 376 (5th Cir. 1995) (stating that Rooker–Feldman does not "bar an action in federal court when that same action would be allowed in the state court of the rendering state"); *see also Kamilewicz v. Bank of Boston Corp.,* 100 F.3d 1348, 1350 (7th Cir.1996) (Easterbrook, J., dissent-

ing from denial of rehearing en banc) ("[A] judgment that is not entitled to full faith and credit does not acquire extra force via the Rooker–Feldman doctrine."). In all events, denying jurisdiction based on a state court judgment that is not eligible for review by the United States Supreme Court simply would not follow from the jurisdictional statute that invigorated the Rooker–Feldman doctrine in the first place. *See ASARCO Inc. v. Kadish,* 490 U.S. 605, 622, 109 S.Ct. 2037, 104 L.Ed.2d 696 (1989) ("The *Rooker–Feldman* doctrine interprets 28 U.S.C. § 1257 as ordinarily barring direct review in the lower federal courts of a decision reached by the highest state court, for such authority is vested solely in [the Supreme Court]."); *see also* 28 U.S.C. § 1258 (providing for Supreme Court review of Puerto Rico court decisions).

From this amalgam, we extract the well-pleaded facts and draw all reasonable inferences favorable to the complainant. *See Papasan v. Allain*, 478 U.S. 265, 283, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986); *Correa-Martinez v. Arrillaga-Belendez*, 903 F.2d 49, 52 (1st Cir.1990). Under this forgiving standard, we cannot affirm the dismissal order.

 Individuals have constitutionally protected interests in free association and electoral participation, including the formation of new political parties. *See Anderson v. Celebrezze*, 460 U.S. 780, 793–94, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983); *Williams v. Rhodes*, 393 U.S. 23, 30–31, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968). Thus, courts must view severe restrictions on party ballot access skeptically, affording exacting scrutiny to such restrictions. *See Norman v. Reed*, 502 U.S. 279, 288–89, 112 S.Ct. 698, 116 L.Ed.2d 711 (1992). Here, the complaint alleges facts which, if true, tend to support the appellants' claims that the notarization requirement and seven-day deadline unduly burden ballot access. If, for example, the appellants can prove that notarization is prohibitively expensive or otherwise difficult to achieve (as the complaint avers), then the Commission will have to show that the notarization requirement is narrowly drawn to advance a compelling governmental interest. *See id.* This showing requires the Commission to come forward with proof. Whether it ultimately can succeed in this endeavor is a sufficiently open question that we cannot conclude, *on the pleadings*, that no set of facts exists under which the appellants might prevail.[6]

That clinches the matter. The fact-specific nature of the relevant inquiry, *see, e.g., Anderson*, 460 U.S. at 789–90, 103 S.Ct. 1564 (warning that this type of inquiry is never "automatic"), obviates a resolution of this case on the basis of the complaint alone. Consequently, the district court acted too hastily in dismissing the action for failure to state a potentially viable claim.

## IV. FURTHER PROCEEDINGS

 Having found dismissal unwarranted, we normally would remand the case for vacation of the district court's order and further proceedings in the ordinary course. Here, however, considerations of federalism, comity, and sound judicial administration prompt us to travel a path less frequently taken.[7]

The distinguishing circumstance in this case is that the appellants filed suit in federal court while simultaneously pursuing (through the Party) an appeal from a disposition of the same claims in the commonwealth courts. This twist creates an unusual, but not unprecedented, procedural posture. In *Glen Oaks Utils., Inc. v. City of Houston*, 280 F.2d 330 (5th Cir. 1960), a group of plaintiffs filed suit in federal district court while simultaneously appealing an unfavorable state court judgment on essentially the same claims. *See*

6. Although we express no opinion on the merits of the appellants' claims, we do reject the appellees' contention that Supreme Court precedent bars those claims as a matter of law. Granted that the Court sanctioned a notarization requirement in *American Party v. White*, 415 U.S. 767, 94 S.Ct. 1296, 39 L.Ed.2d 744 (1974), but there was no intimation that Texas restricted notarial status to members of the bar, and the relevant signature threshold was one percent of the active electorate, not five percent. *See id.* at 777–78, 94 S.Ct. 1296. Similarly, *Jenness v. Fortson*, 403 U.S. 431, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971), does not pretermit the appellants' complaint; the Georgia law upheld there required signatures from five percent of the electorate, but contained no concomitant notarization requirement. *See id.* at 438–39, 91 S.Ct. 1970.

7. Notwithstanding that the parties did not raise the issues that impel us to this course either to the district court or on this appeal, we have the power to do so *sua sponte*. *Cf. Waldron v. McAtee*, 723 F.2d 1348, 1351 (7th Cir.1983) (explaining that a federal appellate court "has the power and in appropriate cases the duty to order abstention, if necessary for the first time at the appellate level, even though no party is asking for it").

*id.* at 331–32. There, as here, the duplication included parallel requests for injunctive relief based on an alleged abridgement of federal constitutional rights. *See id.* at 333–34. And at that time, Texas, like Puerto Rico, did not accord res judicata effect to a judgment which was on appeal.[8] *See id.* at 334. The Fifth Circuit nonetheless affirmed an order staying federal court proceedings pending final resolution of the state court proceedings. *See id.* The court explained (in words that apply with equal force to the instant case):

> Here the jurisdiction of the state court was already invoked and the [plaintiffs] had sought to bring about that unseemly conflict between two sovereignties which the doctrines of comity and abstention are designed to avoid.

*Id.; cf. In re President of Harvard College,* 149 F.2d 69, 72–73 (1st Cir.1945) (holding stay improper absent a state court judgment, but suggesting that an opposite result would inhere if a state court judgment had been rendered and was pending on appeal in the state system).

■ Since *Glen Oaks,* abstention and related doctrines have proliferated. *See Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 716–17, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (listing varieties of abstention). Nonetheless, the bedrock is unshaken: familiar principles of federalism and comity undergird virtually all of abstention's many doctrinal permutations. *See, e.g., Younger v. Harris,* 401 U.S. 37, 44, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) (grounding one branch of abstention doctrine in comity and federalism); *Louisiana Power & Light Co. v. City of Thibodaux,* 360 U.S. 25, 28, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959) (stating that abstention cases "reflect a deeper policy derived from our federalism"); *Railroad Comm'n*

*v. Pullman Co.,* 312 U.S. 496, 501, 61 S.Ct. 643, 85 L.Ed. 971 (1941) (justifying abstention as a means to "further[ ] the harmonious relation between state and federal authority"). Moreover, the various strains of abstention-related doctrines are not Procrustean taxonomies, but, rather, concepts that reflect "a complex of considerations designed to soften the tensions inherent in a system that contemplates parallel judicial processes." *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 11 n. 9, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987); *see also DeMauro v. DeMauro,* 115 F.3d 94, 99 (1st Cir.1997). Thus, considerations of "wise judicial administration" alone may sometimes warrant dismissal of a federal court proceeding. *Colorado River Water Conserv. Dist. v. United States,* 424 U.S. 800, 818, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

■ To be sure, this case arguably does not fit into any of the established doctrinal boxes;[9] and, at best, abstention remains "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it," *County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 188, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959). Nevertheless, several factors coalesce to convince us that a stay is appropriate until the proceedings presently pending before the Puerto Rico Supreme Court have run their course.

■ First, federal courts should exercise their equitable powers with discretion. *See El Dia, Inc. v. Hernandez Colon,* 963 F.2d 488, 497–98 (1st Cir.1992). An important hallmark of equity is the ability to assess the totality of the circumstances and custom-tailor appropriate relief. It follows that "[s]imply because an equitable remedy may be available does not necessarily mean that it must automat-

---

8. Texas later abandoned this rule in favor of the majority view. *See Scurlock Oil Co. v. Smithwick,* 724 S.W.2d 1, 6 (Tex.1986) (overruling *Texas Trunk R.R. Co. v. Jackson,* 85 Tex. 605, 22 S.W. 1030 (1893)).

9. The most analogous fork of abstention-related doctrine flows from *Colorado River,* 424 U.S. at 817–20, 96 S.Ct. 1236, and we rely heavily on cases from this branch.

ically issue." *Id.* at 497 (citing, inter alia, *Tennessee Valley Auth. v. Hill,* 437 U.S. 153, 193, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978)). We think that the circumstances here counsel in favor of restraint.

Second, the appellants waited to file suit in federal court until after the Puerto Rico Court of First Instance had entered a final judgment adverse to their interests. Their timing raises the discomfiting specter of forum-shopping—and we are free to factor this circumstance into the decisional calculus. *See Gonzalez v. Cruz,* 926 F.2d 1, 4 (1st Cir.1991) (stating that the order in which jurisdiction attaches not only can be considered, but also "must be examined in light of the motivation of the plaintiff in filing the second suit"). Indeed, in most jurisdictions, res judicata would bar the appellants from going to judgment in the state court and then searching out a federal forum as a means of bobbing once more for the apple. Although we may ascribe no greater preclusive effect to the earlier judgment than would the Puerto Rico courts, we need not turn a blind eye to those proceedings. *See Bailey v. Ness,* 733 F.2d 279, 282 (3d Cir.1984); *see also Lundborg v. Phoenix Leasing, Inc.,* 91 F.3d 265, 272–73 (1st Cir.1996) (holding abstention appropriate even though claims were not barred by res judicata). As a practical matter, the appellants filed the present suit in an effort to detour around an unfavorable judgment of the commonwealth trial court, and this attempted end run is highly relevant to the calculus of abstention. *See Villa Marina Yacht Sales, Inc. v. Hatteras Yachts,* 947 F.2d 529, 533–34 (1st Cir.1991) (affirming abstention based in part on federal plaintiff's motivation); *see also Lundborg,* 91 F.3d at 273 (upholding order of dismissal when suit was "effectively an attempt to undo a preexisting, final judgment of a state court").

Third, the commonwealth proceedings were not only filed first, but have now progressed much further. This, too, affects the desirability of abstention. *See*

*Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 21–22, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). The Party initially selected the commonwealth courts and aggressively pursued its members' interests in that venue. If the federal courts now choose to defer, the appellants have no one to blame but themselves.

Fourth, the case before the Puerto Rico Supreme Court is more comprehensive than the newer federal case because it covers both commonwealth and federal constitutional claims. Plainly, the interests of judicial efficiency and eliminating piecemeal litigation favor resolving these closely related claims in a single forum. *See Bath Mem. Hosp. v. Maine Health Care Fin. Comm'n,* 853 F.2d 1007, 1012–13 (1st Cir.1988). There is also a real possibility that the Puerto Rico Supreme Court may decide the case before it on state-law grounds in a way that avoids altogether the necessity for federal constitutional adjudication. The attractiveness of abstention increases in direct proportion to the strength that one attaches to this possibility. *See Pullman,* 312 U.S. at 501, 61 S.Ct. 643; *Romany v. Colegio de Abogados,* 742 F.2d 32, 40 (1st Cir.1984); *see also Aggarwal v. Ponce Sch. of Med.,* 745 F.2d 723, 726 (1st Cir.1984) ("It has long been a basic tenet of the federal courts to eschew the decision of cases on constitutional grounds unless and until all other available avenues of resolution were exhausted.").

Last, and perhaps most important, the Puerto Rico Supreme Court stands poised to enter a judgment on the merits that in all probability will carry full preclusive effect under Puerto Rico law. From the standpoint of federalism and comity, there is something particularly offensive about hijacking a case that is pending on the docket of a state's highest tribunal. *See American Benefit Life Ins. Co. v. United Founders Life Ins. Co.,* 515 F.Supp. 800, 803 (W.D.Okla.1980) ("Considerations of comity and principles of sound judicial administration require abstention when a state court decision is on appeal to that

state's supreme court and a second action is filed in federal court."). Because we have no reason to doubt that the "parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties," *Moses H. Cone,* 460 U.S. at 28, 103 S.Ct. 927, abstention presents a very palatable option.

■ We recognize, of course, that the presence of a federal issue "must always be a major consideration weighing against surrender [of federal jurisdiction]." *Id.* at 26, 103 S.Ct. 927; *accord Gonzalez,* 926 F.2d at 5. The time-sensitive nature of the appellants' claims exerts additional pressure on this side of the balance. Nevertheless, given the unusual posture of the case and the combined force of the factors we have enumerated, these considerations are substantially outweighed by compelling interests of fairness, comity, and sound judicial administration. *See Glen Oaks,* 280 F.2d at 333–34 (affirming stay of proceedings pending resolution of state supreme court appeal notwithstanding the fact that the plaintiffs' complaint raised federal constitutional issues); *Ray v. Hasley,* 214 F.2d 366 (5th Cir.1954) (similar). As we previously wrote in an analogous setting, "when a state court has matters well in hand, withholding federal [equitable] relief premised on constitutional grounds will maintain and facilitate federalism; foster state-created accommodations of constitutional principles and state interests; and husband federal judicial resources." *El Dia,* 963 F.2d at 497.

We need go no further. For the foregoing reasons, the order dismissing the appellants' action is reversed and the matter is remanded to the district court with instructions to vacate that order and stay proceedings pending the Puerto Rico Supreme Court's decision in the parallel commonwealth court litigation. The district court is, of course, at liberty to vacate the stay or to make other or further orders in the event of changed circumstances.

*So Ordered.*