### José Emilio PÉREZ GUZMÁN, Plaintiff,

v.

### Aurelio GRACIA, et al, Defendants.

### No. CIV. 01–2132(HL).

United States District Court,
D. Puerto Rico.

March 10, 2003.

---

Nelson Rosario, San Juan, PR, for Jose Emilio Perez–Guzman, plaintiff.

Ramon L. Walker–Merino, Rene Arrillaga–Belendez, Arrillaga & Arrillaga, San Juan, PR, for Juan R. Melecio, Carlos Lopez–Feliciano, Pedro Figueroa, Damaris Mangual, Defendants.

## OPINION AND ORDER

LAFFITTE, Chief Judge.

Before the Court is a claim by Plaintiff Juan Emilio Pérez Guzmán ("Pérez") seeking declaratory and injunctive relief to declare 16 L.P.R.A. § 3101(3) in violation of the Constitution. This section defines the procedure by which a new political party may register to appear on the general election ballot. Pérez claims that the requirement that the petitions to register a party must be notarized by an attorney violates his First Amendment and equal protection rights. Defendants are the members of the Puerto Rico State Elections Commission ("SEC"). The Commonwealth of Puerto Rico has also intervened in this case in defense of the statute.[1] On January 13, 2003, the Court held a hearing on the merits of Pérez's claim. The parties have submitted post-trial briefs, and the Court is ready to rule.

### 1. Findings of fact

1. In Puerto Rico's 2000 gubernatorial elections, approximately 2,000,000 citizens voted.[2]

2. When an organization submits petitions to the SEC to have a new political party registered, SEC personnel check each petition to ensure that the signatures are valid. Although the SEC does not have personnel at present dedicated solely to this function, the agency can, and does, hire employees as this need arises.[3]

3. The SEC is currently in the process of digitally recording all its records of registered voters. The project is expected to be finished by the end of 2003. Once completed, this new computerized record-keeping system will

---

1. Docket nos. 34 & 37.

2. At the hearing, an SEC official estimated this number at 1,800,000. Testimony of Ramón Jimenez–Fuentes. The SEC's own web site indicates that this figure was slightly above 2,000,000. See http://www.cee-pur.net/elecciones2000/escrutinio/summary.html. The Court takes judicial notice of this figure. Fed.R.Evid. 201.

3. Testimony of Ramón Jimenez–Fuentes.

facilitate the agency's ability to check petitions that are submitted to it.[4]

4. In Puerto Rico, only attorneys may serve as notaries.[5] They are strictly regulated by the Puerto Rico Notary Law.[6]

5. A lawyer-notary certifies that a person signing a document is who the signatory claims to be in one of two ways: (1) by checking the signatory's driver license, passport, or other identification or (2) by certifying that she personally knows the signatory.[7]

6. In certain classes of electoral petitions and forms, the SEC allows "ad hoc notaries" to certify the validity of signatures. Ad hoc notaries are individuals registered to vote in Puerto Rico who have been authorized by the SEC to verify signatures. These individuals do not necessarily have to be lawyers.[8]

7. The SEC allows ad hoc notaries to be used for a person registering to vote, a voter changing his electoral address, petitioners seeking to have an independent candidate placed on the ballot, and petitions nominating candidates for primaries all require only an ad hoc notary.[9] Additionally, in the status plebiscite held in 1998, the "PRO ELA" organization qualified for campaign funds based on petitions that it had submitted to the SEC which were notarized by ad hoc notaries.[10]

8. In Puerto Rico, the fair market price for a lawyer to notarize a simple document signed at the lawyer's office is between fifteen and twenty dollars. If the document is complicated or requires the attorney to prepare it, or if the lawyer has to travel to the place where the signing will take place, the fee can go up to as much as fifty or sixty dollars.[11]

9. The five lawyer-notaries who testified all stated that they would be unwilling to notarize documents at the rate of one dollar per signature.[12]

10. There are approximately 13,000 lawyers in Puerto Rico. Of this number, approximately 8,000 are notaries.[13]

11. Pérez has attempted to convince voters to sign petitions to register the Civil Action Party. However, the petitions must be notarized by a lawyer, and he has been unable to obtain the requisite number of petitions.[14]

### 2. Legal analysis

█ To register a new political party in Puerto Rico, the fledgling organization must submit to the SEC petitions signed by registered voters in a number aggre-

---

**4.** *Id.*

**5.** 4 P.R. Laws Ann. § 2011 (1994); *RB Town & Country Realty, Inc. v. TLC Beatrice Int'l Holdings*, 966 F.Supp. 131, 132 (D.P.R.1997).

**6.** 4 P.R. Laws Ann. §§ 2001—2141. A lawyer-notary's failure to comply with his duties can result in the imposition of stiff sanctions. *See, e.g., In re González González*, 119 P.R.Dec. 496, 499–500 (1987).

**7.** Testimony of Daniel Zambrana.

**8.** Testimony of Ramón Jimenez–Fuentes.

**9.** Docket no. 42, at 10–11.

**10.** *Id.* at 11.

**11.** Testimony of Daniel Zambrana–Santiago, Miguel Sarriera–Román, Wilma Rosario–Rodríguez, Jesús Rivera–Delgado, and Alberto Accvedo–Colón.

**12.** *Id.*

**13.** Testimony of Miguel Sarriera–Román.

**14.** Testimony of José Emilio Pérez Guzmán.

gating at least five percent of the total votes cast for gubernatorial candidates in the preceding election.[15] Thus, individuals attempting to register a new party would have to obtain approximately one hundred thousand signatures. Each signature must be notarized by an attorney, who is entitled under the law to receive a fee from the SEC of only one dollar per notarized signature.[16]

 Pérez claims that this regime violates the Constitution. Citizens have the constitutional right to foster and develop new political parties. This right is derived from the First and Fourteenth Amendments.[17] It is a right to associate and to form political organizations which advance common goals and ideals.[18] A regulation or statute which imposes a severe burden on this right "must be narrowly tailored and advance a compelling state interest."[19] A court should view severe restrictions to ballot party access "skeptically, affording exacting scrutiny to such restrictions."[20]

If a plaintiff challenging such a statute can show that he is severely restricted by it, the state then must establish a corresponding interest which is sufficiently significant to justify the limitation.[21] That is, the state must come forward with some proof to justify the reason for the challenged restriction.[22]

In the present case, in order to register a new political party, Pérez will need approximately one hundred thousand signatures notarized by attorneys. He has shown that in Puerto Rico attorneys charge, at a minimum, fifteen dollars to notarize a signature and that attorneys are unwilling to notarize signatures at the rate of one dollar set forth in section 3101(3). Thus, one hundred thousand signatures at a cost of fifteen dollars per notarization would come to 1,500,000 dollars. This strikes the Court as an unreasonably high price tag for an individual who is seeking to exercise his constitutional rights.[23]

15. 16 P.R. LAWS ANN. § 3101(3) (Supp.1998).

16. Id.

17. Norman v. Reed, 502 U.S. 279, 288, 112 S.Ct. 698, 705, 116 L.Ed.2d 711 (1992).

18. Timmons v. Twin Cities Area New Party, 520 U.S. 351, 357, 117 S.Ct. 1364, 1369, 137 L.Ed.2d 589 (1997).

19. Id. at 358, 117 S.Ct. at 1370; see also Norman, 502 U.S. at 289, 112 S.Ct. at 705.

20. Cruz v. Melecio, 204 F.3d 14, 22 (1st Cir. 2000).

21. Norman, 502 U.S. at 288–89, 112 S.Ct. at 705.

22. Cruz, 204 F.3d at 22.

23. At the hearing Defendants elicited from one of the testifying attorneys an acknowledgment that he might be willing to notarize signatures en masse for a flat fee of one thousand dollars per month. However, that

attorney also stated that he would initially agree to such an arrangement on a trial basis only; that he would do it only if he could continue to handle his other legal work; that the signatories would have to go to his office; and that he would work only one hour per day on this project. He assumed that he would be notarizing up to 500 signatures per month. See Testimony of Miguel Sarriera–Román.

Even assuming that these conditions could be met, the Court finds that this arrangement would provide little succor to someone attempting to register a new political party. The cost of this procedure would still be significant. This arrangement comes to two dollars per signature. One hundred thousand notarizations would thus cost 200,000 dollars. Additionally, at a rate of 500 signatures a month, it would take over sixteen years to obtain the requisite number of signatures. If other attorneys could be convinced to enter into this agreement, the time would of course be less. However, even if a sizeable cadre of attorneys could be recruited to this cause, anyone attempting to convince voters to sign petitions would also have to convince these

It is clear that Pérez faces a sizeable financial obstacle in his quest to register a new political party. It is thus beholden upon Defendants to show that the requirement that petitions be notarized by an attorney is narrowly tailored and advances a compelling government interest.[24] Here, Defendants fail to meet their burden. In fact, they made little attempt to justify or explain why a new political party requires notarizations done by a lawyer-notary. Their lone witness testified only that there are other situations where the SEC does require that a signature be notarized by a lawyer. In the situations cited by this witness, however, the applicant only had to submit one notarized signature. The Court belabors the obvious in noting that a requirement of obtaining a single notarization from a lawyer is significantly less burdensome than a requirement of one hundred thousand notarizations.

The Court can conceive of no reason—and Defendants have proffered none—why lawyer-notaries are necessary for the registration of new political parties. In other instances, the SEC relies on the services of ad hoc notaries. Presumably, they fulfill their duties adequately in those situations. Ad hoc notaries were allowed for the petitions of the 1998 status plebiscite. If the SEC relies on ad hoc notaries for elections dealing with topics as important as the status of Puerto Rico, it is reasonable to assume that they would also be competent enough for the registration of new political parties. It is thus unclear why lawyers are required in the particular circumstances of the present case. A lawyer will notarize a signature merely by verifying the signatory's identification. This is not a complex task that requires special training or skill. There is no reason to believe that attorneys who happen to be notaries are somehow more adept than non-lawyers at reading and verifying an individual's drivers license or passport.

The Court recognizes that Puerto Rico has a legitimate interest in ensuring the integrity of its electoral process. It is also legitimate to require that registered political parties demonstrate a minimum level of support.[25] However, there is no indication in the record that lawyer-notaries are somehow better than ad hoc notaries at advancing these interests. Moreover, there are already other safeguards in Puerto Rico's electoral regime which do protect these concerns. First, anyone seeking to register a political party must convince approximately one hundred thousand voters to sign off on this cause. This is not an insignificant number. Second, these one hundred thousand signatures will be checked by SEC personnel. Third, even if a party were able to overcome these two hurdles through some improper subterfuge, the party still must face the ultimate arbiter: the electorate. In order to remain registered, a political party must receive a specified minimum percentage of the votes cast in the last general election.[26]

voters to go to the selected attorney's office at a specific time to sign a petition. These logistical factors create additional obstacles to the registration of a new political party. They are unnecessary when there is a ready, less obtrusive, alternative which the SEC has used in other facets of its regulatory scheme: an ad hoc notary who goes to the potential signatory.

24. *Timmons*, 520 U.S. at 358, 117 S.Ct. at 1370; *Norman*, 502 U.S. at 289, 112 S.Ct. at 705.

25. *Jenness v. Fortson*, 403 U.S. 431, 442, 91 S.Ct. 1970, 1976, 29 L.Ed.2d 554 (1971); *Maine Green Party v. Maine Secretary of State*, 173 F.3d 1, 3 (1st Cir.1999); *Libertarian Party of Maine v. Diamond*, 992 F.2d 365, 371 (1st Cir.1993).

26. 16 P.R. Laws Ann § 3101(1). A party must receive in the previous general election at least (1) five percent of all the votes cast for governor, (2) seven percent of all the votes cast, or (3) three percent of the total number

A party that fails to meet this minimum will then have to register by petition once again and will lose government funding.[27]

All of these mechanisms serve to protect legitimate concerns regarding the regulation of elections. There is nothing before the Court to demonstrate that the use of lawyer-notaries protects these concerns any better than ad hoc notaries would. Lawyer-notaries charge fifteen dollars per signature; ad hoc notaries charge nothing. Thus, section 3101(3), which ostensibly is intended to protect an individual's right of free association, has instead less salutary consequences: it imposes a daunting financial burden on fledgling parties and co-coons the already existing political parties from competition. Defendants have not met their burden of showing that the lawyer-notary requirement is narrowly tailored and advances a compelling state interest. The record demonstrates that there is available a much-less burdensome means of verifying signatures. Accordingly, the Court holds that the requirement in section 3101(3) that petitions for new political parties be notarized by a lawyer is unconstitutional and in violation of Pérez's First Amendment rights.[28] Judgment shall be entered accordingly.[29]

**IT IS SO ORDERED.**

### JUDGMENT

Pursuant to the opinion and order issued by the Court on this same date, judgment is hereby entered declaring the requirement in 16 L.P.R.A. § 3101(3) that petitions for new political parties be notarized by a lawyer to be in violation of the First Amendment of the Constitution.

---

of straight ticket ballots cast for Governor and Resident Commissioner.

**27.** 16 P.R. Laws Ann. §§ 3115 & 3116.

**28.** Because the Court finds section 3101(3) to be in violation of the First Amendment, it is unnecessary to consider whether it also violates Pérez's equal protection rights.

**29.** The Court notes that the First Circuit in *Cruz* observed that section 3101(3) appeared to suffer from constitutional defects. However, the procedural posture of the appeal precluded the First Circuit from entering into a review of the constitutionality of the statute. 204 F.3d at 22.