**OVERSEAS MILITARY SALES CORPORATION, a New York corporation Plaintiff**

v.

**Lcda. Noema GIRALT–ARMADA, in her capacity as Secretary of the Department of Consumer Affairs of the Commonwealth of Puerto Rico, and Ernesto Nieves–Nieves, an individual Defendants**

No. CIV. 04–1858CCC.

United States District Court, D. Puerto Rico.

Sept. 30, 2005.

34

Jesús E. Cuza–Abdala, Hato Rey, PR, PHV Linda Reck, for Plaintiff.

Jo–Ann Estades Boyer, Esq., Ana M. Margarida–Julia, Esq., for Defendants or Respondent.

## OPINION AND ORDER

CEREZO, District Judge.

Overseas Military Sales Corporation (Overseas), a company dedicated to selling automobiles exclusively on the military base at Fort Buchanan, Puerto Rico, has sued Puerto Rico's Department of Consumer Affairs (DACO) for a declaratory judgment that it is subject only to the United States' jurisdiction on the matter of vehicle sales and their warranties pursuant to the federal enclave doctrine and that DACO has infringed said doctrine by entertaining and presiding over complaints filed against it.

Overseas filed an Emergency Motion for Preliminary Injunction on September 14, 2004 (docket entry 8). Defendants filed a Motion to Dismiss (docket entry 24). Plaintiff also filed a Motions for Final Entry of Default Judgment against Nieves–Nieves (docket entries 18, 21, and 22). The matters were referred to the Magistrate Judge (docket entry 27 and 30), who issued two Report and Recommendations (docket entries 39 and 43). Overseas filed a Motion for Default Judgment and Requesting Adoption of the Magistrate Judge's Report and Recommendation (docket entry 40) as to Nieves–Nieves.

We must determine whether this action would require this federal court to re-adjudicate the very same issues that were determined by the Supreme Court in *Rodríguez–Planell v. Overseas Military Sales Corp.*, 2003 JTS 141, 2003 WL 22228004 (2003) [1], and, whether it is an attempt to obtain direct review of the Puerto Rico Supreme Court's decision in the lower federal courts. *ASARCO v. Kadish*, 490 U.S. 605, 109 S.Ct. 2037, 2048, 104 L.Ed.2d 696 (1989). *Rodríguez Planell* is a case in which the factual scenario is essentially identical to ours; that is, a dissatisfied car owner, resident of Puerto Rico, purchased his vehicle from Overseas and filed a complaint with DACO. The Supreme Court of Puerto Rico there ruled that "a Puerto Rico resident may petition for such remedies as are provided in the Motor Vehicle Warranty Regulations, approved by the Consumer Affairs Department (hereinafter DACO, its Spanish Acronym), to bring a claim for the alleged defects of an automobile which he acquired at a distributor authorized to do business exclusively within military bases." *Id.*, at 106. In sum, we must determine whether this lawsuit, as stated by our Circuit in *Federación de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico* 410 F.3d 17, 26 (1st Cir.2005), "shares the characteristics of the suits in *Rooker* and *Feldman*, i.e. loser in state court invites federal district court to overturn state-court judgment."

The Magistrate Judge concluded at page 14 of her report (docket entry 43) that "this Court does not have subject matter jurisdiction to entertain this case under the '*Rooker Feldman* Doctrine." She concluded that the Supreme Court of Puerto Rico ruled "upon the same controversy we face today in this case," Report and Recommendation, at page 9, referring to that court's ruling quoted above from *Rodríguez Planell.* The Magistrate Judge correctly outlined the facts of said case: *Rodríguez Planell* bought from Overseas Military Sales Corp. ("Overseas" is a plaintiff in this case and a defendant in the Commonwealth case) a 2000 Jeep Chero-

---

**1.** We are using the certified translation, the page numbering of which is the same as the original Spanish language opinion.

kee, filed a claim before DACO against Overseas alleging it had paint defects and Overseas appeared before DACO, without submitting to the jurisdiction of said agency and requested dismissal of the claim. It contended that it had its facilities at Fort Buchanan, engaged in selling motor vehicles exclusively on military bases in Puerto Rico and conducted business solely with members of the armed forces pursuant to a car sales program of the United States Department of Defense. It argued, therefore, that DACO lacked jurisdiction to decide the controversy and that local law did not apply to it.

Overseas requested review by the Puerto Rico Circuit Court of Appeals which held that DACO had no jurisdiction over the matter since jurisdiction of local fora over controversies or events occurring on a United States military base in Puerto Rico is limited to cases where there is no applicable federal law and the failure to apply local law would result in a legal loophole. The Supreme Court of Puerto Rico reversed, holding that "pursuant to the 'Federal enclave' doctrine, the United States Congress exercised its exclusive jurisdiction within Fort Buchanan by expressly allowing the application of such State laws Favoring consumers as were not inconsistent with the provisions of the Magnuson-Moss Act, *supra*. Since the Motor Vehicle Warranty Regulations, *supra*, do not conflict with the aforesaid federal law, appellee has available to him such remedies as are provided in local law to bring an action for alleged defects exhibited by the vehicle acquired from overseas" *Rodríguez Planell, supra*, at 110, 2003 WL 22228004.

*Rodríguez Planell* explained, with regard to the federal enclave doctrine, that:

> [W]hen the events in controversy take place within a United States military base, we have ruled on the jurisdictional conflict by adopting the Federal enclave doctrine. In this way, in *Roberts*

*v. U.S.O. Council of P.R.*, 145 D.P.R. 58 (1998) ... we explained that said doctrine-which is derived from Art. I, Section 8, Clause 17, of the U.S. Constitution-postulates that the Federal Congress has exclusive jurisdiction to establish what law shall govern within United States military bases. Nevertheless, we clarify that such plenary power does not extend, absent more, to conferring exclusive jurisdiction on the Federal courts to decide such controversies as are produced there. That is to say, according to the standard set forth in *Roberts,* with the military bases of the United States, the Federal government has exclusive jurisdiction in the legislative arena, but not in the judicial.

Regarding this point, we have stated that the concept of "legislative jurisdiction" refers to who has the authority to regulate, through legislation, a given subject matter, event or situation. Put another way, *"legislative jurisdiction"* refers to what law applies to a given controversy. ... While, on the other hand, "judicial jurisdiction refers to what court (State or Federal) is authorized to decide such controversies as arise within the enclave".

The essence and scope of the aforesaid *"legislative jurisdiction"* were developed by this Court in *Quiles Vda. de Font v. Colsa, Inc.*, 147 D.P.R. 360 (1999). On that occasion we stated that, in spite of the fact that ordinarily the legislation applicable to a controversy originating on a military base is Federal law, this presupposes that Congress effectively has legislated on the matter to be decided. In other words, that the application of Federal law to such situations is conditioned on Congress, by virtue of the plenary power vested in it to regulate the activities of the military base, having legislated on the subject

matter specifically at issue. In accordance therewith, we concluded in that, in view of the fact that there was no Federal legislation to specifically address the controversy, it would be proper to apply the local law on damages.

In spite of the fact that in *Quiles, supra,* the application of the Puerto Rican law was in response to the fact that there was no applicable Federal law, we have likewise ruled that there are situations in which it is proper to apply local laws even though there also exists Federal law pertinent to the controversy.... Said conclusion is not inconsistent with what was set forth in Roberts, supra, at p. 70, where we point out that even in Federal enclaves, states can reserve given domains or controversies over which they may legislate or act, as long as that exercise is not inconsistent with Federal purposes of the enclave.

Therefore, it can be said that in spite of the fact that the usual in controversies originating in a Federal Enclave is that the legislation passed by the United States Congress is applied, said operation is not automatic. Hence, we may properly apply State law when there is no Federal legislation to address the controversy directly, or when the former is not preempted by the latter, expressly or implicitly.

*Rodríguez Planell,* supra, at 107–108, 2003 WL 22228004. (Emphasis in the original.) (Citations omitted.)

The Court went on to discuss the Magnuson–Moss Warranty Federal Trade Commission Improvement Act, 15 U.S.C. § 2301, et seq., and determined that there did not exist in the letter or purposes of that statute any intention to preempt State legislation. It concluded, on the contrary, that "the federal act itself provides for coexistence with state laws" and cited 15 U.S.C. § 2311(b)(1), which provides that "nothing in [15 U.S.C. § 3201 et. seq] shall invalidate or restrict any right or remedy of any consumer under State law or another Federal law." *Rodríguez Planell, Id.,* at 109, 2003 WL 22228004. · It concluded that the DACO regulations obeyed the minimum guarantees established by the Magnuson–Moss Act and that they not only adhered to the federal minimum regulations, but actually provided greater consumer protections. The Court also noted that "the vehicle in question is not one for military use nor does it travel exclusively within the grounds of the 'military enclave,' but, rather travels along the avenues and streets of Puerto Rico". *Id.,* at 110, 2003 WL 22228004.

The *Rodríguez Planell* case falls within one of the three situations which are listed in *Federación de Maestros de Puerto Rico,* 410 F.3d at 23, as qualifying under the "Ended" test set forth in *Exxon Mobil Corp. v. Saudi Basic Industries,* 544 U.S. 280, 125 S.Ct. 1517, 161 L.Ed.2d 454, to wit: "when the highest state court in which review is available has affirmed the judgment below and nothing is left to be resolved, then without a doubt the state proceedings have 'ended.' "

Among Overseas' objections, it states that it is not seeking review by this court of the decision in *Rodríguez Planell.* At paragraph 36, plaintiff states that "[it] has been exceedingly careful to avoid any misconception that it is seeking review by this Court of the *Rodríguez Planell* judgment." Plaintiff's allegations in the amended complaint tell a different story. The challenges to the determination of the Supreme Court in this case are found in several paragraphs of the amended complaint:

"38. Even though the United States Supreme Court, the First Circuit Court of Appeals, and the United States District Court of Puerto Rico have consistently held that the laws of Puerto Rico generally

**38**

do not apply within a federal enclave such as Fort Buchanan, in *Rodríguez Planell* ... the Puerto Rico Supreme Court recently held otherwise."

Footnote 4 "The Puerto Rico Supreme Court has issued such a contradictory opinion . . . ."

"39. In *Rodríguez Planell,* the Puerto Rico Supreme Court effectively eliminated the federal enclave doctrine and converted it into a doctrine of preemption. . . ."

Footnote 5 "Not only is *Rodríguez Planell* in direct contravention to federal law, it also contradicts recent precedents of the Puerto Rico Supreme Court itself."

"40. Because *Rodríguez Planell* practically eliminated the federal enclave doctrine, Daco is now *unlawfully* entertaining cases filed before it, relating to activities occurring within Fort Buchanan."

Footnote 6 "It should be noted that. . . in accordance with precedent. . . , DACO had been dismissing every administrative complaint filed before DACO against Overseas. After *Rodríguez Planell,* however, DACO has ignored [the precedent] and the federal case law on the federal enclave doctrine."

In its prayer for declaratory judgment, at paragraph 44, Overseas requests that we "(b) [establish] that, contrary to the Puerto Rico Supreme Court's decision in *Rodríguez Planell,* DACO has no jurisdiction over complaints filed before it pertaining to Overseas' business activities which pertain to events exclusively occurring solely within a federal enclave within Puerto Rico's territorial boundaries, including Fort Buchanan."

It is quite clear that Overseas is asking us to review the unfavorable *Rodríguez Planell* decision and reverse it. *Rooker–Feldman* is keyed to Title 28 U.S.C. § 1257, of which its Puerto Rico counterpart § 1258 specifically provides that "[final] judgments or decrees rendered by the

Supreme Court of the Commonwealth of Puerto Rico may be reviewed by the Supreme Court [of the United States] by writ of certiorari. . . ." *See, Federación de Maestro de Puerto Rico, supra,* at 27. Overseas was the losing party in *Rodríguez Planell,* a case in which it had the opportunity to litigate in the commonwealth courts the same issues presented here to the fullest. It now seeks a second bite of the apple, requesting that we readjudicate the issues and declare that DACO regulation and remedies are inapplicable and that DACO cannot decide claims by consumers against Overseas. Such a claim could succeed only if we were to hold that the decision of the Supreme Court of Puerto Rico in *Rodríguez Planell* was incorrect, in violation of *Rooker–Feldman.*

For the above stated reasons, we ADOPT the Magistrates' Report and Recommendation and DENY the Motion for Preliminary Injunction (docket entry 8) GRANT defendants' Motion to Dismiss (docket entry 24). The Magistrate also recommended that default judgment be entered as to co defendant Ernesto Nieves–Nieves (docket entry 30). We REJECT that recommendation, however, as contrary to the determination that this court lacks subject matter jurisdiction. Accordingly, plaintiff's Motion for Default Judgment and Requesting Adoption of the Magistrate Judge's Report and Recommendation (docket entry 40) as to Nieves–Nieves as well as his related motions to enter default against Nieves (docket entries 18, 21, and 22) are DENIED. Judgment will enter dismissing this case.

SO ORDERED.

## REPORT AND RECOMMENDATION

VELEZ–RIVE, United States Magistrate Judge.

### I. Background.

On August 18, 2004, Overseas Military Sales Corporation, LTD ("Overseas") filed

a Complaint against Noema Giralt–Armada ·("Giralt–Armada"), in her capacity as Secretary of the Department of Consumer Affairs of the Commonwealth of Puerto Rico ("DACO"), and Ernesto Nieves Nieves ("Nieves"), an individual who filed a claim against Overseas before DACO for a sale transaction at Fort Buchanan, for declaratory and injunctive relief. Overseas contends Giralt–Armada and DACO are attempting to interfere with the United States government's right to exclusive jurisdiction over Fort Buchanan as a federal enclave. (Docket No. 1).

In essence, Overseas contends DACO laws do not apply to Fort Buchanan or Overseas under the federal enclave doctrine and, notwithstanding the exclusive jurisdiction of the United States over Fort Buchanan and Overseas, DACO is improperly entertaining complaints filed before it against Overseas. Overseas raises several causes of action including a declaratory judgment reiterating the proper analysis under the federal enclave doctrine, as established by the U.S. Supreme Court, the Court of Appeals for the First Circuit and this Court's prior decisions, and establishing that, contrary to the Puerto Rico Supreme Court's decision in *Rodríguez Planell v. Overseas*, 2003 WL 22228004, DACO has no jurisdiction over complaints filed before it pertaining to Overseas' business activities occurring in a federal enclave including Fort Buchanan. In addition, Overseas includes a cause of action for injunctive relief claiming it is entitled to a preliminary and permanent injunction against Giralt–Armada, enjoining her from violating the federal enclave doctrine by entertaining and acting upon complaints filed before DACO against Overseas for its business activities within any federal enclave such as Fort Buchanan. Likewise, Overseas avers it is entitled to a preliminary and permanent injunction against Nieves enjoining him from prosecuting his complaint before DACO. (Docket No. 1).

On September 14, 2004, Overseas filed an Emergency Motion for Preliminary Injunction and Incorporated Memorandum of Law under the same legal grounds alleged in the Complaint. Overseas claims it satisfies all four (4) prongs for the granting of a preliminary injunction in this case, namely: it will likely succeed on the merits; there is a substantial risk of irreparable harm absent a preliminary relief; the balance of hardships weighs in its favor; and the injunction serves the public interest.[1]

On November 1, 2004, Overseas filed a Motion for Default Judgment against Nieves alleging he failed to timely respond to the Complaint as provided by FRCP 12(a) and failed to make an appearance in this case. Accordingly, Overseas requested the immediate entry of default by the Court against Nieves and entry of final judgment pursuant to FRCP 55(b)(2). (Docket No. 18).

On November 3, 2004, the Clerk of Court entered default against Nieves. (Docket No. 20)[2]. On the same day, a Status Conference was held before Honorable Judge Daniel R. Domínguez in which the Court granted in part Plaintiff's Motion for Entry of Final Default Judgment against Nieves (Docket No. 18) noticing that it was precluded to enter default judgment against Nieves because the complaint filed was not verified nor accompanied by a sworn statement attesting as to the veracity of the facts as alleged in the com-

---

**1.** See *Ross–Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 15 (1st Cir.1996); *ESSO Standard Oil Co. (Puerto Rico) v. Mujica Cotto*, 327 F.Supp.2d 110, 129–130 (D.P.R. 2004).

**2.** The docket of this case shows the Clerk of Court also entered default against Nieves on December 2, 2004. (Docket No. 32).

**40**

plaint. The Court stated plaintiff could submit sworn statements attesting said facts and the Court shall evaluate them in order to enter the requested Default Judgment. (Docket No. 26).

On November 11, 2004, Overseas filed a Motion for leave to file Amended Complaint including an additional defendant. (Docket No. 19). The Amended Complaint was withdrawn on December 6, 2004. (Docket No. 28).

On November 17, 2004, plaintiff filed a Motion in Support of Entry of Partial Final Default Judgment against Nieves including a sworn declaration of Christine Budhwa, Esq., Legal Counsel of Overseas, pursuant to 28 USC § 1746, wherein she verified the accuracy of the facts in plaintiff's Complaint and Emergency Motion for Preliminary Injunction. (Docket Nos. 21 and 22).

On November 21, 2004, defendant Giralt–Armada filed a Motion to Dismiss plaintiff's Motion for Preliminary Injunction and the Answer to the Amended Complaint. (Docket No. 24 and 25). Defendant avers in her Motion to Dismiss the injunctive relief sought by Overseas is barred by the *Rooker–Feldman* doctrine to the extent Overseas seeks a reversal of the decision of the Supreme Court of Puerto Rico in *Rodríguez Planell v. Overseas,* 2003 WL 22228004. In addition, defendant claims there is no constitutional urgency to require judicial intervention since Overseas has failed to exhaust his state judicial remedies when there is an ongoing state administrative proceeding. Accordingly, defendant submits the basic rules of the

*Younger* abstention doctrine apply so long as the state proceedings provide an adequate opportunity for the complaining party to present its federal claims. (Docket No. 24).

On December 2, 2004, the Court referred to this Magistrate Judge for report and recommendation Overseas' Emergency Motion for Preliminary Injunction, its Memorandum of Law in support thereof and Defendant's Motion to Dismiss. (Docket No. 27).[3]

An evidentiary hearing on the preliminary injunction was held before the undersigned on December 14, 2004. (Docket No. 41). Overseas called as a witness John I. Phillips, Vice-president of Overseas. Defendant called as its witness José Morales–Bauzá, Esq., DACO's Bayamón Regional Director. The Court granted the parties ten (10) days, concurrent for each party, to file any supplemental brief in support of their respective positions.

**II.Analysis.**

i. *Preliminary Injunction.*

An injunction has the effect of requiring a party either to do or refrain from doing something. "A preliminary injunction is effective *pendente lite* until a decision has been reached at a trial on the merits." 11A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 2d,* § 2941, at 33 (1995).

■ A court presented with a request for preliminary injunction must assess the following four (4) factors:

(1) the likelihood of success on the merits;

---

**3.** On the same day, the Court also referred to this U.S. Magistrate Judge for report and recommendation Plaintiff's Motion for Final Entry of Default Judgment against Nieves (Docket No. 30). A report and recommendation as to this matter was issued on December 7, 2004 recommending that: (1) the default entered on November 3, 2004, by the Clerk of the United States District Court of Puerto

Rico against defendant Emesto Nieves Nieves be approved and ratified; (2) plaintiff's Motion for Entry of Final Default Judgment against Defendant Ernesto Nieves Nieves be GRANTED; and (3) default judgment be entered in favor of plaintiff Overseas Military Sales Corporation, LTD against Emesto Nieves Nieves. (Docket No. 39).

(2) the potential for irreparable harm if the injunction is denied;

(3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and

(4) the effect (if any) of the court's ruling on the public interest.

*Ross–Simons,* 102 F.3d at 15; *ESSO,* 327 F.Supp.2d at 129–130.

"The *sine qua non* of this four-part inquiry is likelihood of success on the merits: if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." *New Comm Wireless Servs., Inc. v. SprintCom, Inc.,* 287 F.3d 1, 9 (1st Cir.2002) (*citing Weaver v. Henderson,* 984 F.2d 11, 12 (1st Cir.1993)).

It has been held that "irreparable harm constitutes a necessary threshold showing for an award of preliminary injunctive relief." *Charlesbank Equity Fund II Ltd. v. Blinds To Go, Inc.,* 370 F.3d 151, 162 (1st Cir.2004) (*citing Matos v. Clinton Sch. Dist.,* 367 F.3d 68, 73 (1st Cir.2004)). The burden is on the movant to demonstrate that the denial of preliminary injunctive relief is likely to cause irreparable harm and such showing must be "grounded on something more than conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store." *ESSO,* 327 F.Supp.2d at 130–131.

ii. *Rooker–Feldman Doctrine.*

Thus, the first step in this inquiry is plaintiff's likelihood of success on the merits of the case. Defendants submit Overseas is not likely to succeed on the merits because this case is barred by the *Rooker–Feldman* doctrine to the extent Overseas seeks a reversal of the decision of the Supreme Court of Puerto Rico in *Rodríguez Planell v. Overseas,* 2003 WL 22228004.

The *Rooker–Feldman* doctrine takes its name from two Supreme Court cases: *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and six decades later, *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). In *Rooker,* 263 U.S. at 416, 44 S.Ct. 149, the Supreme Court affirmed the district court's conclusion that jurisdiction was lacking, stating that: "[u]nder the legislation of Congress, no court of the United States other than this court could entertain a proceeding to reverse or modify the judgment of a state court for errors of that character."

In turn, *Feldman* reaffirmed the *Rooker* holding that only the Supreme Court has jurisdiction to review decisions of state courts; therefore, district courts have no jurisdiction to entertain challenges to state-court decisions, even if the challenges alleged are constitutional in nature. *Feldman,* 460 U.S. at 476, 103 S.Ct. 1303. The effect of the *Rooker–Feldman* doctrine is to provide an independent basis for prohibiting collateral attack on state court judgments. *Rooker,* 263 U.S. at 415–416, 44 S.Ct. 149; *Feldman,* 460 U.S. at 476, 103 S.Ct. 1303; *Badillo–Santiago v. Naveira–Merly,* 378 F.3d 1, 6 (1st Cir.2004); *Wilson v. Shumway,* 264 F.3d 120, 125 (1st Cir., 2001); *Hill v. Town of Conway,* 193 F.3d 33, 34–35 (1st Cir.1999).[4]

4. See *Giles Toro v. University of Puerto Rico,* 183 F.Supp.2d 457, 461–462 (D.P.R.2001) (father's federal claims that his due process rights were violated by testing laboratory and director of another lab in connection with submission of allegedly erroneous DNA test results in paternity and child filiation suit brought before the Superior Court of Puerto Rico was barred by *Rooker–Feldman* doctrine; Commonwealth court decision ruling test results admissible was from the highest state court when Puerto Rico Supreme Court entered a final judgment by denying the *writ of*

■ *Rooker–Feldman* applies to state or territorial court judgments to which the federal courts would accord preclusive effect, *Cruz v. Melecio*, 204 F.3d 14, 21 n. 5 (1st Cir.2000), and the federal courts "can ascribe no greater preclusive force to a state court judgment than would .the courts of that state," *Id.* at 21; *Badillo–Santiago*, 378 F.3d at 6.

■ In order to apply the constraints of the *Rooker–Feldman* doctrine a judgment must have been final and from the highest court. *U.S. Industries v. Laborde*, 794 F.Supp. 454, 462 (D.P.R.1992). First, as applied in *Feldman*, the doctrine is based on 28 U.S.C. § 1257, which limits review of final judgments on the merits of the highest state court of a State to the Supreme Court. *Id.* Review of final judgments of the Supreme Court of Puerto Rico are controlled by 28 U.S.C. § 1258. The two provisions have no substantive differences. *Giles Toro*, 183 F.Supp.2d at 461.

Thus, under the *Rooker–Feldman* doctrine federal courts below the United States Supreme Court may not exercise appellate jurisdiction over the decisions and/or proceedings of state courts, including claims that are "inextricably intertwined" with issues decided in state court proceedings. *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 486–87, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Peterson Novelties, Inc. v. City of Berkley*, 305 F.3d 386, 390–91 (6th Cir.2002). Thus, courts have consequently adopted the rationale "that a federal claim is 'inextricably intertwined" with a state court judgment and thus implicates *Rooker–Feldman* when 'the feder-

al claim succeeds only to the extent that the state court wrongly decided the issues before it[.]". *Executive Arts Studio, Inc. v. City of Grand Rapids*, 391 F.3d 783, 2004 WL 2827041 (6th Cir.2004); *DLX, Inc. v. Kentucky*, 381 F.3d 511 (6th Cir.2004). Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment. *Peterson Novelties*, 305 F.3d at 391. *See, e.g., Anderson v. Charter Township of Ypsilanti*, 266 F.3d 487, 492–94 (6th Cir.2001) (applying "inextricably intertwined" test to hold *Rooker–Feldman* abstention appropriate).

■ The *Rooker–Feldman* doctrine proceeds to ask whether the federal plaintiff is seeking to set aside a state judgment or whether it presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party. If the former, then the district court lacks jurisdiction; if the latter, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion. *GASH Assocs. v. Rosemont*, 995 F.2d 726, 728 (7th Cir.1993).

### iii. *The Rodríguez–Planell Decision.*

In *Rodríguez Planell*, 2003 WL 22228004, the Supreme Court of Puerto Rico faced the following issue which, in essence, is the same controversy we face today in this case, to wit, whether a resident of Puerto Rico may request the reme-

---

*certiorari*, and the actions which father claimed deprived him of his due process were the same actions that resulted in the introduction of the DNA results and subsequent finding of paternity); *Federación de Maestros de Puerto Rico, Inc. v. Junta de Relaciones del Trabajo de Puerto Rico*, 265 F.Supp.2d 186, 188 (D.P.R.2003) (under the *Rooker–Feldman* doctrine, District Court had no jurisdiction to

review decision by Supreme Court of Puerto Rico denying *writ of certiorari* to review decision upholding Puerto Rico labor commission's denial of employer's motion to dismiss based on exclusive jurisdiction of National Labor Relations Board (NLRB), even if decisions by courts of Puerto Rico were erroneous).

dies provided by DACO to claim for the alleged defects of a vehicle purchased from a dealer authorized to do business exclusively within federal military bases. Rodríguez–Planell bought from Overseas a 2000 Jeep Cherokee Sport at Fort Buchanan and, after taking possession of the vehicle, noticed it had defects in its paint. Rodríguez–Planell took the vehicle to Alberic Colón, authorized representative of Jeep in Puerto Rico, to have the vehicle repaired pursuant to the warranty. Nonetheless, Alberic Colón refused to repair the vehicle claiming Rodríguez–Planell examined and inspected the vehicle at the time of purchase with full knowledge it had defects in the paint. Moreover, Alberic Colón alleged that for said defect Rodríguez–Planell obtained a $1,600.00 discount at the time of purchase, knowing and accepting the discount as the only compensation to be received for the defect.

Then after, Rodríguez–Planell filed a claim before DACO against Overseas, among others, alleging the vehicle presented factory defects in its paint. Overseas appeared before DACO, without submitting to the jurisdiction, and filed a motion to dismiss the claim. Overseas alleged it was a foreign corporation with facilities at Fort Buchanan and its main business was to sell vehicles exclusively at military bases to members of the armed forces who have certain privileges. Thus, Overseas averred local law did not apply to it being only subject to the federal law known as the "Magnuson–Moss Warranty Federal Trade Commission Improvement Act", 15 U.S.C.A. § 2301 ("Magnuson–Moss"). Accordingly, Overseas alleged DACO did not have jurisdiction to entertain the claim stating DACO's organic law limits its authority to provide remedies exclusively under the laws of Puerto Rico.

DACO then issued an interlocutory decision denying Overseas' motion to dismiss based on the fact the *Magnuson–Moss* did not pre-empt DACO's law, 3 L.P.R.A. § 341. Moreover, DACO stated that if it did not assume jurisdiction, an anomaly would take place inasmuch a group of vehicle consumers in Puerto Rico would have less rights than others because they would not have access to the less expensive forum, which is quicker and with more expertise on the matter.

Overseas appealed DACO's decision to the state Circuit Court of Appeals who in turn reversed DACO's decision indicating jurisdiction of local forums over facts and controversies occurring at a military base in Puerto Rico is limited to those cases in which there is no federal applicable law and, thus, not to apply local law would result in a "judicial lagoon." The Circuit Court of Appeals indicated, as well, that such jurisdiction is judicial, limited to controversies which might be entertained before local courts.

In disagreement with the Circuit Court of Appeals' ruling, DACO appealed the ruling to the Puerto Rico Supreme Court raising the following error: the Circuit Court of Appeals erred in determining the *Magnuson–Moss* federal law pre-empts state law and in resolving DACO lacks jurisdiction over the facts and, as a consequence, the Puerto Rico Rules and Regulations on Motor Vehicle Warranties ("Reglamento de Garantías de Vehículos de Motor de Puerto Rico") does not apply even when federal law states the remedies under local and state laws will be available to claimant.

The Puerto Rico Supreme Court explained that under the federal enclave doctrine, Congress has exclusive jurisdiction to establish the law which will rule on military bases in the United States. Nonetheless, this plenary power does not confer to federal courts exclusive jurisdiction to entertain controversies arising in military bases. That is, according to the

ruling in *Roberts v. USO Council of P.R.*, 145 D.P.R. 58 (1998), the federal government has exclusive legislative jurisdiction inside military bases of the United States, but not **judicial**. The Puerto Rico Supreme Court explained "legislative jurisdiction" means that it has power to rule a certain matter by legislation or, in other words, "legislative jurisdiction" is what law applies to a specific controversy. In turn, "judicial jurisdiction" means which court (state or federal) has authority to entertain controversies originating in federal enclaves.

In addition, the Puerto Rico Supreme Court ruled that, even though normally the applicable legislation to a controversy arising in a federal enclave is legislation approved by Congress, said application is not automatic. Accordingly, state law should be applied when there is no federal legislation directly on the matter, or when the first is not pre-empted implicitly or explicitly by the second.

The Puerto Rico Supreme Court then evaluated the *Magnuson–Moss* Act[5] and determined that in the words or in the purpose of the law there is no intent to pre-empt state legislation. On the contrary, the *Magnuson–Moss* federal law provides for its co-existence with state laws in stating: "[n]othing in this title [15 U.S.C. § 2301 *et seq.*] shall invalidate or restrict any right or remedy of any consumer under State law or any other Federal law." 15 U.S.C. § 2311(b)(1).

Thus, the Puerto Rico Supreme Court concluded the *Magnuson–Moss* federal law establishes some norms and procedures which constitute the minimal protection every state, as defined by law, should provide to its consumers. Nonetheless,

this does not exclude the concurrent application of state legislation that adheres or surpasses, in benefit of the consumer, the minimal federal protection.

That being the case, the Puerto Rico Supreme Court concluded that DACO's Rules and Regulations on Motor Vehicle Warranties not only adhered to the minimum federal requirements but also contained more precise and detailed dispositions than the law of Congress thus offering more protection to the consumers. Accordingly, the Puerto Rico Supreme Court ruled DACO's rules and regulations did not conflict with the remedies provided by the *Magnuson–Moss* federal law, nor with any federal or military significant interest. Thus, Rodríguez–Planell was to utilize the remedies provided by DACO and DACO may entertain the matter in controversy.

In sum, the ruling of the Puerto Rico Supreme Court in *Rodríguez Planell*, 2003 WL 22228004, p. 5, may be summarized as follows:

> ... In accordance with the federal enclave doctrine, the United States' Congress exercised its exclusive jurisdiction inside Fort Buchanan specifically allowing the application of state laws in benefit of the consumer which were not inconsistent with the dispositions of the Magnuson–Moss. Due to the fact that DACO's rulings does not collide with the Magnuson–Moss federal law, claimant has at his disposition the remedies provided by local law to claim for the alleged defects of the vehicle he purchased at Fort Buchanan from Overseas. As such, the Circuit Court of Appeals erred in ruling the Magnuson–Moss federal

---

**5.** The Magnuson–Moss Warranty Act is a federal statute that specifies minimum standards for warranties on "consumer products". See 15 U.S.C.A. § 2304. These standards apply to the contents of warranties, the terms and conditions of service contracts, and provides remedies to consumers who fall prey to warrantors that do not honor their warranties or service contracts. *Vizcarra Pellot v. Ford Motor Co.*, 263 F.Supp.2d 303, 310 (D.P.R.2003).

law was the only law applicable to the case and in depriving access to claimant to DACO.

### iv. *Application of the Rooker–Feldman Doctrine to this case.*

This Magistrate Judge finds that Overseas is not likely to succeed on the merits due to the application of the *Rooker–Feldman* abstention doctrine because Overseas' federal cause of action seeks an unavailable review of the Supreme Court of Puerto Rico's judgment in *Rodríguez Planell*, judgment which is "inextricably intertwined" to this case. Where federal relief can only be predicated upon a conviction that the state court was wrong, the federal proceeding becomes a prohibited appeal of the state-court judgment. *Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 23, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987); *Giles Toro*, 183 F.Supp.2d at 463.

Turning to the instant case, we conclude that Overseas is seeking in the instant case a review of the Puerto Rico Supreme Court's decision in *Rodríguez Planell*. This case is no different in any significant way from *Rodríguez Planell* which is Puerto Rico Supreme Court's final decision that it is well founded and correct under the applicable law. Therefore, if this Court grants Overseas' preliminary injunctive request, this federal action would void the decision of the Puerto Rico Supreme Court in *Rodríguez Planell*.

The decision in *Rodríguez Planell* is final. As explained above, DACO's interlocutory decision was appealed to the Circuit Court of Appeals who reversed DACO. In turn, the decision of the Circuit Court of Appeals was appealed to the Puerto Rico Supreme Court which in turn overruled the Circuit Court of Appeals. Since there is a final judgment on the merits from the highest state court of Puerto Rico, the *Rooker–Feldman* doctrine applies in full force to this case. *Feldman*, 460 U.S. at

486, 103 S.Ct. 1303; *Wang v. New Hampshire Bd. of Registration in Medicine*, 55 F.3d 698, 703 (1st Cir.1995); *Giles Toro v. University of Puerto Rico*, 183 F.Supp.2d 457, 462 (D.P.R.2001).

The proceedings before the state court, the Puerto Rico Circuit Court of Appeals and the Puerto Rico Supreme Court gave Overseas the opportunity to fully litigate the subject matter. If we grant Overseas' preliminary injunction request, we will deny consumers who buy vehicles at Fort Buchanan their right to file claims before DACO for remedies provided by local law for defects as authorized by the Puerto Rico Supreme Court in *Rodríguez Planell*. We will be thus allowing a collateral attack on a state court decision in clear violation of the *Rooker–Feldman* doctrine. It is a basic principle of subject matter jurisdiction that federal district courts should not serve as appellate courts for state court decisions. *See Wilson v. Shumway*, 264 F.3d 120 (1st Cir.2001).

Accordingly, this Court does not have subject matter jurisdiction to entertain this case under the *Rooker–Feldman* doctrine. As such, Overseas is not likely to succeed on the merits.

Although this Magistrate Judge understands this ruling under the *Rooker–Feldman* doctrine is enough to dispose of the preliminary injunctive request, we proceed to discuss the doctrines of *res judicata* and collateral estoppel as additional grounds for the denial of the preliminary injunctive requests.

### v. *Res Judicata.*

The Court of Appeals for the First Circuit has clarified that "*res judicata* operates as an absolute bar to the relitigation of the same cause of action between parties (or their privies) and that a prior judgment rendered on the merits is conclusive not only to the issues which were

determined but as to all matters which might have been determined as well." Therefore, federal courts must give full faith and credit to final judgments of the Commonwealth of Puerto Rico courts. *See Baez–Cruz v. Municipality of Comerio,* 140 F.3d 24, 28 n. 1 (1st Cir.1998); see also 28 U.S.C. § 1738.

To determine the preclusive effect of the Commonwealth's judgment in federal court, the Court must look to Puerto Rico law. *See* 28 U.S.C. § 1738; *see also Cruz v. Melecio,* 204 F.3d 14, 18 (1st Cir.2000). The Puerto Rico Civil Code sets forth the doctrine of preclusion: "In order that the presumption of the *res judicata* may be valid in another suit, it is necessary that, between the case decided by the sentence and that in which the same is invoked, there be the most perfect identity between the things, causes, and persons of the litigants, and their capacity as such." P.R. Laws Ann. tit. 31, § 3343. Although this provision speaks of "res judicata," it additionally permits issue preclusion or collateral estoppel. *Muñiz Cortés v. Intermedics, Inc.,* 229 F.3d 12, 14 (1st Cir.2000).

The Supreme Court of Puerto Rico has held that when an issue "essential to the prior judgment is actually litigated and determined by a valid and final judgment, the determination is conclusive in subsequent litigation among the parties." Puerto Rico's *res judicata* principles operate to preclude claims that were or could have been raised in a previous suit.

### A. *Identity of Things.*

The Puerto Rico Supreme Court held there is an identity of things only "if when deciding on the object of a complaint, the judge may contradict a prior decision affirming a right arisen or arising from, or a right affirmed by a prior court decision." *Giles Toro,* 183 F.Supp.2d at 464. For *res judicata* purposes, "thing corresponds basically to the object or matter over which

the action is exercised." *Id.* Identity of "things" is found when a decision in the second action contradicts the prior adjudication. *Id.*

We have already addressed this issue in the *Rooker–Feldman* analysis above. A ruling of the Court in this case would in effect contradict the Puerto Rico Supreme Court's ruling in *Rodríguez Planell.* If the Court were to grant Overseas' preliminary injunctive request, it would in essence be contradicting the Puerto Rico Supreme Court's decision in *Rodríguez Planell* that DACO's rulings does not collide with the *Magnusson–Moss* federal law and thus, claimant has at his disposition the remedies provided by local law under DACO to claim for the alleged defects of the vehicle he purchased at Fort Buchanan from Overseas. Therefore, this Magistrate Judge finds that there is an identity of things because the object of the action is the same and a ruling by this Court would contradict the Puerto Rico Supreme Court's holding in *Rodríguez Planell. See Giles Toro,* 183 F.Supp.2d at 457.

### B. *Identity of Cause of Action.*

The Supreme Court of Puerto Rico has explained "cause of action" as "the principal ground, the origin or exceptions raised and decided, and it must not be mistaken for the means of proof nor for the legal grounds of the claims adduced by the parties." *Lausell v. Díaz,* 103 D.P.R. 533, 1975 WL 38829 (1975); *Giles Toro,* 183 F.Supp.2d at 465. Although a single cause of action can manifest itself in several different claims, the requisite identity is achieved if all such theories concern "the same operative nucleus of fact." *Id.*

The issue raised in this federal case is virtually the same issue which was raised before the Puerto Rico Supreme Court in *Rodríguez Planell,* as above discussed. The issues in both cases raise out of the

same transaction and factual basis (customers' purchases of motor vehicles at Fort Buchanan from Overseas) and seek redress for the same wrong (enjoin DACO from entertaining claims of defects of vehicles purchased by consumers from Overseas at Fort Buchanan). Therefore, it might be concluded they arise from the "same operative nucleus of fact." Overseas' theory of recovery is barred.

## C.  *Identity of Parties.*

The preclusion statute provides that there is identity of parties whenever "the litigants of the second suit are legal representatives of those who litigated in the preceding suit, or when they are jointly bound with them or by the relations established by the indivisibility of prestations among those having a right to demand them, or the obligation to satisfy the same." P.R. Laws Ann. tit. 31, § 3343. Although Puerto Rico's mutuality requirement is strictly worded, on a number of occasions the Puerto Rico courts have not read this requirement literally. *Giles Toro,* 183 F.Supp.2d at 465; *see Republic Sec. Corp. v. Puerto Rico Aqueduct and Sewer Auth.,* 674 F.2d 952, 955–56 (1st Cir.1982); *De León v. Colón,* 42 P.R.R. 21, 27, 1931 WL 5032 (1931) (permitting preclusion based on previous action that included additional defendants); Restatement (Second) of Judgments § 51(1).

The parties in the case before the State Courts were Overseas, Scotiabank de Puerto Rico, Alberic Colón, Chrysler International Services S.A. and Rodríguez–Planell (consumer who bought the vehicle from Oversea at Fort Buchanan). Now, the parties to this action in Federal Court are Overseas, Giralt–Armada and Nieves. Thus, the parties are no strictly identical in both the State case and the federal case. However, although the language of the provision calls for "the most perfect identity of persons" between the first and second case, federal courts have noted that on

a number of occasions the Puerto Rico courts do not read the requirement literally. *Baez–Cruz,* 140 F.3d at 29 (*citing Futura Dev. Corp. v. Centex Corp.,* 761 F.2d 33, 43 (1st Cir.1985)). Even though there is not total identity of the parties, there is a mutuality of interest amongst the parties in the Commonwealth suit and the parties in the federal suit because they are defending the same interests and positions.

Thus, this Magistrate Judge holds that this Court does not have subject matter jurisdiction to entertain this case under the principles of *res judicata.* Accordingly, Overseas is not likely to succeed on the merits of its case.

### vi.  *Collateral Estoppel.*

Finally, although defendants were not parties in the state court proceedings, they need not have been in order to invoke issue preclusion/collateral estoppel. In order to use collateral estoppel offensively, defendants need only show that plaintiff, "against whom issue preclusion will be applied, had a fair opportunity to litigate the issue fully". *Giles Toro,* 183 F.Supp.2d at 466. To meet this standard, "state proceedings need do no more than satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause." *Baez–Cruz,* 140 F.3d at 30.

We have already addressed the issue that Overseas had the opportunity to fully litigate its case before the Puerto Rico Supreme Court. Overseas' instant suit essentially alleges the same facts that were presented and fully litigated at the state court level. Collateral estoppel operates defensively in this matter because it precludes plaintiff from relitigating DACO's jurisdiction to entertain claims by consumers for defects of motor vehicles purchased from Overseas at Fort Buchanan. Overseas had an obligation to raise these issues at the state court level, and in fact it did,

48

including the federal enclave doctrine as previously explained. Preclusion includes all "claims that were raised or could have been raised." *Giles Toro,* 183 F.Supp.2d at 466.

Accordingly, this Court does not have subject matter jurisdiction to entertain this case under the principles of *res judicata* and/or collateral estoppel. Hence, Overseas is not likely to succeed on the merits of its case.

### vii. *Overseas' claims to support Likelihood of Success on the Merits.*

Even though we have already determined Overseas is not likely to succeed on the merits of its case, we address the arguments raised by Overseas in support of its contention that is likely to succeed on the merits based on the federal enclave doctrine; issue preclusion and the non-application of the *Rooker–Feldman* doctrine to this case. (Docket No. 42).

Overseas' claims are mainly based on the federal enclave doctrine contending "the federal government has *exclusive* legislative jurisdiction over all federal enclaves. See *People v. Koedel,* 927 F.2d 662 (1st Cir.1991); *Rivera de León v. Maxon Eng'g Servs., Inc.,* 283 F.Supp.2d 550 (D.P.R.2003)." (Docket No. 42, p. 2) (Emphasis in original). Overseas further contends that the language of the *Magnuson-Moss* has not "clearly authorized" the application of DACO's laws and regulations to federal enclaves.

We note Overseas is correct in its assertion that under the federal enclave doctrine the federal government has exclusive **legislative** jurisdiction. This does not mean that under the federal enclave doctrine the federal government has exclusive **judicial** jurisdiction as eloquently explained by the Puerto Rico Supreme Court in *Rodríguez Planell.*

This District Court in *Sopena v. Colejón Corp.,* 920 F.Supp. 259, 264 (D.P.R.1996) explained that exclusive legislative jurisdiction and exclusive court jurisdiction are two different concepts and the fact that exclusive legislative jurisdiction exists over a military base is not equivalent to stating that federal courts have exclusive jurisdiction over all actions arising in a federal enclave. This District Court ruled as follows:

Contrary to Colejón's assertion, the fact that exclusive legislative jurisdiction exists over Roosevelt Roads Base is not equivalent to stating that federal courts have exclusive jurisdiction over all actions arising in a federal enclave. Exclusive legislative jurisdiction and exclusive court jurisdiction are two different concepts; legislative jurisdiction refers to "what law applies", whereas, court jurisdiction means the power of a court to hear a claim, irrespective of the statute under which it arises. The normal rule of construction for court jurisdiction is that where a federal statute is silent, state and federal courts have concurrent court jurisdiction over cases brought under that statute. Only when the federal statute explicitly so provides, the federal district court has exclusive court jurisdiction. *Charles Dowd Box Co. v. Courtney* 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962); *People of Puerto Rico v. Koedel,* supra [6]. *E.g. Nolla, Galib & Cia. v. Tribunal Superior,* 93 D.P.R. 646, 649 (1966).

Furthermore, this District in *Kelly v. Lockheed,* 25 F.Supp 2d 1, 3 (D.P.R.1998) (Hon. Judge Daniel R. Domínguez) defined "federal enclave" as "a portion of land over which the United States government exercises exclusive federal **legislative** jurisdiction." (Emphasis added).

---

**6.** *People v. Koedel,* 927 F.2d 662 (1st Cir. 1991).

Thus, the fact that exclusive "legislative jurisdiction" exists over Fort Buchanan does not mean federal courts have exclusive "judicial jurisdiction." State law should be applied when there is no federal legislation directly on the matter, or when the first is not pre-empted implicitly or explicitly by the second.

In this case, there is concurrent jurisdiction by the state and federal court as concluded in *Rodríguez Planell* over DACO's law.

The Magnuson–Moss Warranty Act is a federal statute that specifies minimum standards for warranties on "consumer products". See 15 U.S.C.A. § 2304. These standards apply to the contents of warranties, the terms and conditions of service contracts, and provides remedies to consumers who fall prey to warrantors that do not honor their warranties or service contracts. *Vizcarra Pellot v. Ford Motor Co.*, 263 F.Supp.2d 303, 310 (D.P.R. 2003). The *Magnuson–Moss* law provides for the co-existence with state laws when it states: "[n]othing in this title [15 U.S.C. § 2301 et seq.] shall invalidate or restrict any right or remedy of any consumer under State law or any other Federal Law." 15 U.S.C. § 2311(b)(1). This does not exclude the concurrent application of state legislation as in this case the application of DACO's laws and regulations.

In addition, Overseas claims that the *Rooker–Feldman* doctrine cannot apply to this case because the *Rodríguez Planell* case does not have preclusive effect on the present claim "because the issue of the application of the federal enclave doctrine to Overseas' operation was not addressed, litigated or decided in *Rodríguez Planell*." [7] (Docket No. 42, pp. 8–9). This contention is without merit because, even though the decision of *Rodríguez Planell*

was reached upon the Magnuson–Moss Act, it makes clear reference to the federal enclave doctrine. A review of the decision in *Rodríguez Planell* shows the federal enclave doctrine was raised and the Puerto Rico Supreme Court did indeed consider the same when rendering its decision. The Puerto Rico Supreme Court thoroughly and at length discusses the federal enclave doctrine and the case of *Roberts v. U.S.O. Council of P.R.*, 145 D.P.R. 58 (1998) to explain that inside federal military bases the federal government has exclusive legislative jurisdiction but not judicial. *Rodríguez Planell*, 2003 WL 22228004, pp. 2–5 and n. 15 and 21.

Furthermore, Overseas alleges there is no preclusive effect and *res judicata* does not apply because there is no identity of the parties in this case and the state case. (Docket No. 42, p. 8). The fact that in both cases the defendants are different is of no great significance because both cases are intertwined due to the similarity of the facts and controversies presented as discussed above. Moreover, the applicability of *Rooker–Feldman* does not depend upon the identity of the parties in the state and federal suits because the doctrine is rooted in federalism. [T]he lower federal courts ... are "simply without authority to review most state court judgments—regardless of who might request them to do so." *Lemonds v. St. Louis County*, 222 F.3d 488, 493 (8th Cir.2000). *See also, Johnson v. City of Shorewood*, 360 F.3d 810, 818 (8th Cir.2004) (unlike collateral estoppel, the *Rooker–Feldman* doctrine does not necessarily depend upon an identity of parties or claims between the state and federal litigation, and because the doctrine is jurisdictional, it may be raised *sua sponte*.)

7. The parties stipulated at a hearing before Hon. Judge Daniel R. Domínguez that the "Rodríguez–Planell case was ruled upon the

Magnuson–Moss Act and not upon the federal enclave·doctrine." (Docket No.26).

**50**

Based on the above, this Magistrate Judge concludes Overseas has not met the first prong of the preliminary injunction standard, since there is not a substantial likelihood that it will succeed on the merits of the case. Consequently, this alone is sufficient to defeat Overseas' request for a preliminary injunction.

Therefore, this Magistrate Judge finds plaintiff Overseas has failed to demonstrate a likelihood of success on the merits of the case. Because "a movant's likelihood of success at trial is particularly influential in the preliminary injunction calculus[,]" *Cohen v. Brown University,* 991 F.2d 888, 903 (1st Cir.1993), we find it unnecessary to continue its analysis of the standard for granting a preliminary injunction.

Even if, for the sake of the argument, this Magistrate Judge were to consider that plaintiff has demonstrated a likelihood of success on the merits, it would not have completed the entire inquiry regarding the requirements for a preliminary injunction because plaintiff has failed to make a sufficient showing that it would suffer irreparable harm if the preliminary injunction is denied. As properly recognized by Overseas, litigation expenses and economic losses do not constitute irreparable harm. *Renegotiation Bd. v. Bannercraft Clothing Co.,* 415 U.S. 1, 94 S.Ct. 1028, 39 L.Ed.2d 123 (1974). (Docket No. 8 and 42).

### III. Conclusion

In view of the foregoing, this Court does not have subject matter jurisdiction to entertain this case under the *Rooker–Feldman* doctrine and the principles of *res judicata* and/or collateral estoppel. Accordingly, it is recommended that Overseas' request for a preliminary injunction be DENIED.

IT IS SO RECOMMENDED.

The parties have ten (10) days to file any objections to this report and recommendation. Failure to file same within the specified time waives the right to appeal this order. *Henley Drilling Co. v. McGee,* 36 F.3d 143, 150–151 (1st Cir.1994); *United States v. Valencia–Copete,* 792 F.2d 4 (1st Cir.1986). *See Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985, 991 (1st Cir.1988) ("Systemic efficiencies would be frustrated and the magistrate's role reduced to that a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round").